AMERICAN EMPLOYERS' INSURANCE COMPANY OF BOSTON, MASSA-
CHUSETTS, Appellant, v. BRANDT MASONRY CORPORATION,
Respondent.

First Department, November 19, 1937.

*Bertrand L. Pettigrew* of counsel [*Pettigrew & Glenney*, attorneys], for the appellant.

*Bert W. Hendrickson* of counsel [*Daniel Mungall*, attorney], for the respondent.

UNTERMYER, J.  The plaintiff, a casualty company, maintains this action as subrogee of Moed Building Corporation, its assured under a liability policy, to recover the amount of a judgment against Moed Building Corporation which the plaintiff has paid as required by the policy.  The judgment was recovered for the death of one Gergich resulting from an accident which occurred during the erection of a sixteen-story building by Moed Building Corporation on a plot of land of which it was the owner.

Moed Building Corporation had entered into contracts with various contractors for different portions of the work.  The defendant, one of these contractors, by written contract, dated October 15, 1928, had agreed to furnish all masonry work pertaining to the building in accordance with the plans and specifications of a particular firm of architects.  The specifications provided that the contractor in connection with the performance of the masonry work should furnish " a sufficient hoisting apparatus, engine, competent engineer as required and at least 2 electric hoisting engines to be installed."

The specifications further provided:

" Safeguards, etc.

" During the progress of the work, the contractor must place and maintain proper and sufficient guards around hoists, fences, etc., for the prevention of accidents, also provide all required shed protection at each end of bridge."

It was also provided that:

" The contractor is to defend at his own cost and expense any suit or suits at law that may be brought against the owner by reason of accidents to any person or persons, or by reason of neglect or oversight on the part of himself or his employees, or by reason of any damage done to adjoining property, and he is also to assume and pay for any and all damage that may arise from any cause by

reason of doing or not doing any part of the within described work."

In the performance of its contract the defendant entered into arrangements with the Pelham Company to install and operate a hoist to be used in the construction of the building, which hoist, though intended primarily for the use of the defendant, seems at various times to have been let to other contractors. On March 25, 1929, between twelve and one o'clock in the afternoon, the use of the hoist had been let to the Matthew Ballich Company, the employer of Gergich, at which time Gergich and a fellow-workman, by means of the hoist, were engaged in transporting materials to the roof of the building. There, on account of the absence of the statutory safeguards surrounding the shaft (Labor Law, § 241), Gergich fell into the shaft and was killed. The court having dismissed the complaint at the conclusion of the plaintiff's case, the plaintiff is entitled to the most favorable interpretation of the facts and inferences to be derived therefrom. Applying that rule we think the plaintiff established a *prima facie* cause of action.

The present case is to be distinguished from cases which involve merely the liability of a contractor who has agreed to indemnify the owner against the consequences of particular acts of negligence. (*Thompson-Starrett Co.* v. *Otis Elevator Co.*, 271 N. Y. 36; *Employers' Liability Assur. Corporation, Ltd.,* v. *New York Linen Supply & Laundry Co., Inc.*, 239 id. 560; *Dudar* v. *Milef Realty Corp.*, 258 id. 415.) The decision in such cases depends on the scope of the covenant of indemnity and whether it is sufficiently comprehensive to include the act of negligence for which the party indemnified had been held liable. A very different question is presented where the liability has resulted from the non-performance by the defendant of a contractual obligation. In the present case the defendant's failure to perform its contract to maintain the safeguards which the statute (Labor Law, § 241) requires, has resulted in the imposition of liability on the plaintiff's insured. There is no reason to hold that the defendant is not liable for the consequences of this breach of its contract to the same extent that it would be liable for the violation of any other of its provisions.

The trial court was of the opinion that the defendant was not required to maintain the safeguards surrounding the shaft at the time of the accident, because it occurred during the luncheon hour of the men engaged in the construction of the building. The court, therefore, held that the accident had not occurred " during the progress of the work," when, under the contract, the defendant

was required to maintain barriers surrounding the shaft. We think this provision should not receive so restricted an interpretation and that, fairly construed, it does not exclude temporary or momentary interruptions of work but includes the entire period intervening between the beginning and the termination of construction under the contract. It is not to be supposed that the parties intended that the defendant might remove the barriers surrounding the shaft with every cessation of work and thereby make it necessary for the owner intermittently to provide the statutory safeguards.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., TOWNLEY, COHN and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.